UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAM KRISHANA, INC. d/b/a MOTEL 6
SULPHUR,

                              Plaintiff,

                -against-

MT. HAWLEY INSURANCE CO.,

                              Defendant.

Case No. 1:22-cv-03803 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

Ram Krishana, Inc. d/b/a Motel 6 Sulphur ("Plaintiff") and Mt. Hawley Insurance Company ("Defendant") have cross-moved for partial summary judgment on choice of law. ECF Nos. 72 ("Def. Br."), 76 ("Pl. Br."), 80 ("Pl. Opp."); 82 ("Def. Opp."). For the reasons set forth below, the Court grants Defendant's motion and denies Plaintiff's motion. The Court also denies Plaintiff's motion to file certain documents under seal.

## BACKGROUND

### I.  Underlying Events

Except where noted, the following facts are undisputed. Plaintiff is a Louisiana business entity with its principal place of business in Louisiana. ECF No. 83 ("Def. RSUF") ¶ 1. Plaintiff does not conduct business outside of Louisiana or own any assets outside of Louisiana, and all of Plaintiff's owners reside in Louisiana. *Id.* ¶¶ 1-3. Defendant is an Illinois corporation with its principal place of business in Illinois. *Id.* ¶¶ 4-5. Defendant has an underwriting and claims office in New York. *Id.* ¶ 6.

Defendant issued Plaintiff an insurance policy covering two commercial properties in Sulphur, Louisiana (the "Properties") for the period from June 27, 2020, to June 27, 2021. *Id.*

1

¶ 10; ECF No. 81 ("Pl. RSUF") ¶ 2; ECF No. 78-3 (the "Policy") at 8.[1]  The limit of liability under the Policy was $3,975,000.  Policy at 8.  The premium for the Policy was $22,020.  *Id.*; Def. RSUF ¶ 11.  Plaintiff paid the premium from a bank account located in Louisiana.  Def. RSUF ¶ 12.

The Policy includes both a choice-of-law clause and a forum-selection clause.  Policy at 109.  Specifically, the Policy states:

> All matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).
>
> It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, any Named Insured, any additional insured, and any beneficiary hereunder shall submit to the jurisdiction of a court of competent jurisdiction in the State of New York, and shall comply with all the requirements necessary to give such court jurisdiction.  Any litigation commenced by any Named Insured, any additional insured, or any beneficiary hereunder against the Company shall be initiated in New York.  Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

*Id.*

On August 27, 2020, Plaintiff notified Defendant of a claim for damage to the Properties caused by Hurricane Laura.  Pl. RSUF ¶ 1; ECF No. 72-2.  On October 10, 2020, during Defendant's investigation of Plaintiff's Hurricane Laura claim, Hurricane Delta

---

[1] The Properties are located at 2020 Ruth Street and 2022 Ruth Street.  Policy at 8.  Defendant denies Plaintiff's assertion that Plaintiff owned the building at 2020 Ruth Street during the relevant period.  Def. RSUF ¶ 3.  The Court assumes for purposes of this decision that Plaintiff owned that building.  *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005) ("[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." (citation omitted)).

impacted Louisiana, causing additional damage to the Properties.  Pl. RSUF ¶ 3; Def. RSUF
¶ 7.  Plaintiff filed a second claim under the Policy for the damage inflicted by Hurricane
Delta.  *See* Pl. RSUF ¶ 4 (referring to "the claims arising from the hurricanes"); ECF No. 78-2
at 19:23 (referring to "two claims").

To date, Defendant has paid $315,040.56 towards Plaintiff's claims.  Pl. RSUF ¶ 4.
The parties dispute whether Defendant has paid Plaintiff for all covered damage under the
Policy.  *Id.*; Def. RSUF ¶¶ 7-9.

## II.   Procedural History

Plaintiff sued Defendant in the United States District Court for the Western District of
Louisiana on August 27, 2021, asserting a claim for breach of contract and a claim for
violations of La. Stat. Ann. §§ 22:1892 and 22:1973.  ECF No. 1 (the "Complaint" or
"Compl.").  Plaintiff's claim under the Louisiana statutes (the "bad-faith claim") specifically
alleged that Defendant had breached its duties "to make a written offer to settle any property
damage claim and pay the amount of any claim due to its insured within thirty (30) days after
receipt of satisfactory proof of loss," *id.* ¶ 39, "to adjust claims fairly and promptly and to
make reasonable efforts to settle claims with the insured," *id.* ¶ 41, and "to pay the amount of
any claim due to any person insured by the contract within sixty (60) days after receiving
satisfactory proof of loss when such failure is arbitrary, capricious, or without[] probable
cause," *id.*

On December 28, 2021, Defendant answered the Complaint and filed a motion under
28 U.S.C. § 1404(a) to transfer the case to this District based on the Policy's forum-selection
clause.  ECF Nos. 17-18.  The Louisiana district court denied Defendant's motion.  ECF No.
29.  Defendant then petitioned the Fifth Circuit for a writ of mandamus "to enforce a
mandatory forum selection clause contained in the [Policy]."  ECF No. 30 at 9.  The Fifth

Circuit granted Defendant's petition, whereupon the case was transferred to this District.  ECF Nos. 31-34.  On September 26, 2022, the case was reassigned to the undersigned.  ECF No. 41.

In a joint letter submitted ahead of the post-discovery conference, "[b]oth parties agree[d] that the choice of law issue is very significant for the progress of this case."  ECF No. 68 at 1.  At the post-discovery conference, the Court and the parties agreed that, in the interests of efficient sequencing of issues and potential facilitation of settlement discussions, the parties should initially cross-move for partial summary judgment on the issue of choice of law.  ECF No. 70; *see Clark v. Hanley*, 89 F.4th 78, 96 n.22 (2d Cir. 2023) ("It is well-established that district courts have discretion to structure the sequence of issues to be adjudicated in a given case."); *Bruschini v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 911 F. Supp. 104, 106 (S.D.N.Y. 1995) (when used properly, motions for partial summary judgment are "conducive to the conservation of judicial resources and of benefit to the parties").  The parties have fully briefed cross-motions on that issue.  Def. Br.; Pl. Br.; Pl. Opp.; Def. Opp.; *see also* ECF Nos. 85-86 (letters regarding supplemental authority).

## LEGAL STANDARD

Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The fact that both sides have moved for summary judgment does not mean that the court is required to enter judgment for one side or the other."  *Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 394 (2d Cir. 2023) (brackets, quotation marks, and citation omitted).  Rather, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021) (citation omitted).

## DISCUSSION

The central issue posed by the present motions is whether Louisiana law (as Plaintiff argues) or New York law (as Defendant argues) governs Plaintiff's claims against Defendant. The Court holds that, under New York choice-of-law rules, the Court must honor the Policy's choice-of-law clause, and therefore New York law applies to Plaintiff's claims.

### I.   Choice-of-Law Rules

At the outset, the Court holds that New York choice-of-law rules apply.

The Policy states that "[a]ll matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules)."  Policy at 109.  "The validity of a contractual choice-of-law clause," however, "is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses."  *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005).  The question is whether New York or Louisiana is the "relevant forum[]."  *Id.*

Under the *Klaxon* rule, a federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits.  *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  There is an exception to the *Klaxon* rule: when a case is transferred from one district to another under 28 U.S.C. § 1404, the transferee court applies the choice-of-law rules of the state in which the transferor court sits.  *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).  But this exception has an exception of its own: "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original

venue's choice-of-law rules." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013).  That is because "[t]he policies motivating [the *Van Dusen*] exception to the *Klaxon* rule for § 1404(a) transfers . . . do not support an extension to cases where a defendant's motion is premised on enforcement of a valid forum-selection clause." *Id.* at 65.  The Supreme Court has thus "reject[ed]" the proposition that "the law of the court in which the plaintiff inappropriately filed suit should follow the case to the forum contractually selected by the parties." *Id.*

Plaintiff originally filed this case in the Western District of Louisiana, Compl., but Defendant successfully transferred the case to this District based on the forum-selection clause in the Policy, ECF Nos. 30-34.  Therefore, under *Klaxon* and *Atlantic Marine*, New York choice-of-law rules apply.[2]

## II.   Substantive Law

"Under New York choice of law rules, the first inquiry in a case presenting a potential choice of law issue is whether there is an actual conflict of laws on the issues presented." *Fed. Ins. Co. v Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011); *accord In re Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993).  As the parties recognize, there is an actual conflict here because New York and Louisiana substantive law differ in material respects, so the Court must decide which state's law applies.  *See* Pl. Br. at 6-7; Def. Br. at 2. Defendant argues that the Court must honor the Policy's New York choice-of-law provision under N.Y. Gen. Obl. Law § 5-1401 and, in the alternative, under New York decisional law.

---

[2] Plaintiff appears to concede this in stating that it "agrees that the choice of law decision is controlled by New York's procedural rules governing how to cho[o]se applicable law."  Pl. Opp. at 2.

Def. Br. at 7-13.  Because the Court agrees with Defendant's second argument, it need not address the first.

Under New York choice-of-law rules, "where parties include a New York choice-of-law clause in a contract, such a provision demonstrates the parties' intent that courts not conduct a conflict-of-laws analysis" and instead simply apply New York substantive law. *Ministers*, 45 N.E.3d at 918.  "[T]his rule obviates the application of both common-law conflict-of-laws principles and statutory choice-of-law directives, unless the parties expressly indicate otherwise."  *Id.*  "Stated differently, New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract, even if the contract is one that does not fall within General Obligations Law § 5-1401."  *Id.* at 922. "To do otherwise . . . would contravene the primary purpose of including a choice-of-law provision in a contract – namely, to avoid a conflict-of-laws analysis and its associated time and expense."  *Id.* at 923; *accord Petróleos de Venez., S.A. v. MUFG Union Bank, N.A.*, --- N.E.3d ----, 2024 WL 674251, at *6 (N.Y. Feb. 20, 2024) ("We reaffirm the principle of . . . *Ministers* that when the parties have chosen New York law, a court may not contravene that choice through a common-law conflicts analysis.").

"The language of *Ministers* is unequivocal and brooks no exceptions," *Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 583 (S.D.N.Y. 2018), and it controls the outcome here, *see Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015) ("When sitting in diversity jurisdiction and determining New York state law claims, we must apply the law of New York as interpreted by the New York Court of Appeals." (quotation marks and citation omitted)).  Regardless of whether the Policy falls within the scope of Section 5-1401, the Court must "not engage in any conflicts analysis" because "by including a [New York] choice-of-law provision in their contracts, the parties

intended for only New York substantive law to apply." *Ministers*, 45 N.E.3d at 922-23.

Thus, the Policy's selection of New York substantive law must be enforced "even if the

[Policy] does not fall within General Obligations Law § 5-1401." *Id.* at 922; *see also*

*Whitaker v. On the Right Track Sys., Inc.*, No. 21-cv-00840 (PKC), 2022 WL 785058, at *3

(S.D.N.Y. Mar. 14, 2022) (applying New York choice-of-law rules to enforce choice-of-law

clause in dispute over less than $250,000), *aff'd*, No. 22-942, 2023 WL 406207 (2d Cir. Jan.

26, 2023) (summary order).

    Plaintiff asserts that "the Policy's choice of law selection clause was void *ab initio* by

operation of [La. Stat. Ann.] § 22:868." Pl. Br. at 5; *see also id.* at 8-11; Pl. Opp. at 2-3.  This

argument is without merit.  Section 22:868 generally provides that "[n]o insurance contract

delivered or issued for delivery in [Louisiana] and covering subjects located, resident, or to be

performed in [Louisiana] . . . shall contain any condition, stipulation, or agreement . . .

[r]equiring it to be construed according to the laws of any other state or country." La. Stat.

Ann. § 22:868(A)(1).  Section 22:868 has no application here given that New York choice-of-

law rules apply and *Ministers* directs the application of New York substantive law as selected

by the Policy.  *See CBKZZ Inv. LLC v. Renaissance Re Syndicate 1458 Lloyds*, No. 22-cv-

10672 (AS), 2024 WL 728890, at *2 (S.D.N.Y. Feb. 22, 2024) ("CBKZZ argues that the

[choice-of-law] provision is unenforceable because applying New York law would violate

Texas insurance law, which applies because the policy was solicited, negotiated, and delivered

in Texas.  But this Court sits in New York and so applies New York's choice-of-law rules.

And the controlling New York rule is that the Court may not conduct the type of choice-of-

law analysis that CBKZZ is proposing when the parties have selected New York law in their

contract." (citations omitted)); *Certain Underwriters at Lloyd's v. New Dominion, LLC*, No.

16-cv-05005 (DLC), 2016 WL 4688866, at *4 (S.D.N.Y. Sept. 7, 2016) (insurance policy's

New York choice-of-law clause was enforceable, and therefore defendant's "discussion of New York's choice of law rules for contracts and insurance policies generally, and of [another state's] law on forum selection clauses, [wa]s inapposite").[3]

In sum, the Policy must be construed under New York substantive law.

## III.    Scope

Plaintiff does not dispute that, if valid, the Policy's choice-of-law clause encompasses Plaintiff's breach-of-contract claim.  Plaintiff does argue, however, that the clause does not cover Plaintiff's bad-faith claim and claim for attorney fees.  *See* Pl. Opp. at 4-5.  The Court agrees with Defendant that the clause encompasses these claims.  *See* Def. Br. at 13-18.

The Policy's selection of New York law extends to "[a]ll matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy."  Policy at 109.  "Under New York law, insurance contracts are construed by applying general principles of contract interpretation."  *Consol. Rest. Operations, Inc. v. Westport Ins.*

---

[3] Plaintiff cites two cases addressing statutes from other jurisdictions with similar language to Section 22:868.  Pl. Br. at 9-10 (discussing *Diamondrock Hosp. Co. v. Certain Underwriters at Lloyd's of London Subscribing to Pol'y Nos. PRPNA1700847 & PRPNA1702387*, No. 18-cv-00399, 2019 WL 2156404 (V.I. Super. Ct. Mar. 5, 2019); and *Jorgenson Forge Corp. v. Ill. Union Ins. Co.*, No. 13-cv-01458, 2014 WL 12103362 (W.D. Wash. June 17, 2014)).  These cases are readily distinguishable because those courts did not apply New York's choice-of-law rules, as the Court must here.  *See Berkley Assurance Co. v. MacDonald-Miller Facility Sols., Inc.*, No. 19-cv-07627 (JPO), 2019 WL 6841419, at *6 (S.D.N.Y. Dec. 16, 2019) (distinguishing *Jorgenson* on the same basis).

Separately, Defendant contends that Section 22:868(A)(1) does not apply because Defendant "is a surplus lines carrier that issues policies not subject to approval by the Department of Insurance," and therefore is eligible for the exception in subsection (D) of Section 22:868.  Def. Br. at 5 n.1; *see also* Def. Opp. at 12-14.  While this argument was also raised before the Western District of Louisiana and the Fifth Circuit, *see, e.g.*, ECF No. 21 at 2-3; ECF No. 30 at 18-23, Plaintiff does not respond to this argument in the briefing before this Court, thus conceding the point here, *see Forge Underwriting Ltd. v. AmTrust Fin. Servs., Inc.*, No. 23-cv-06201 (JLR), 2023 WL 6890844, at *9 (S.D.N.Y. Oct. 19, 2023) ("A party may be deemed to concede an argument by failing to address it in an opposition brief." (citation omitted)).

*Corp.*, --- N.E.3d ----, 2024 WL 628047, at \*3 (N.Y. Feb. 15, 2024).  "Unambiguous provisions of an insurance contract, like any contract, must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court."  *Id.* (quotation marks and citation omitted).

As noted, the thrust of Plaintiff's bad-faith claim is that Defendant allegedly breached its duties "to make a written offer to settle any property damage claim and pay the amount of any claim due to its insured within thirty (30) days after receipt of satisfactory proof of loss," Compl. ¶ 39, "to adjust claims fairly and promptly and to make reasonable efforts to settle claims with the insured," *id.* ¶ 41, and "to pay the amount of any claim due to any person insured by the contract within sixty (60) days after receiving satisfactory proof of loss when such failure is arbitrary, capricious, or without[] probable cause," *id.*  These allegations clearly involve matters "arising []under [the Policy] including questions related to the validity, interpretation, performance and enforcement of th[e] Policy."  Policy at 109; *see, e.g.*, *Com. & Indus. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 07-cv-05731 (JGK), 2008 WL 4178474, at \*3-4 (S.D.N.Y. Sept. 3, 2008) (bad-faith claim fell within scope of choice-of-law clause encompassing any "dispute [involving] the validity or formation of this Policy or the meaning, interpretation or operation of any term, condition, definition or provision of this Policy"); *Core-Mark Int'l Corp. v. Commonwealth Ins. Co.*, No. 05-cv-00183 (WHP), 2005 WL 1676704, at \*3 (S.D.N.Y. July 19, 2005) (bad-faith claim fell within scope of choice-of-law clause encompassing "all matters arising hereunder"); *cf. Bryce Corp. v. XL Ins. Am., Inc.*, No. 23-cv-01814 (KPF), 2023 WL 9004039, at \*5 (S.D.N.Y. Dec. 28, 2023) (bad-faith claim fell outside scope of choice-of-law clause providing only that "New York law shall control the interpretation, application and meaning of this contract").  The same is true of Plaintiff's request for attorney fees in an action premised on an alleged breach of the Policy.  *See, e.g.*,

*CBKZZ*, 2024 WL 728890, at *1, *3 (attorney-fees request fell within insurance policy's choice-of-law clause encompassing "all matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy" (brackets omitted)).  Therefore, New York substantive law applies to all of Plaintiff's claims.[4]

## IV.     Sealing

        In conjunction with its motion for partial summary judgment, Plaintiff filed a letter explaining that, during discovery, Defendant "marked the [Policy] as confidential, presumably because it contains information regarding the premium that was paid for the [P]olicy, which [Defendant] considers to be proprietary business information."  ECF No. 75 at 1.  "In order not to run afoul of the confidentiality designation," Plaintiff requested permission "to publicly file the [Policy] as an exhibit with the premium information redacted," with an unredacted version filed under seal.  *Id.*  Plaintiff similarly asked to file redacted versions of its moving brief and an attorney declaration, "redacting only the amount of the premium."  *Id.*

        Although the Court appreciates Plaintiff's consideration of Defendant's interests, the Court denies this request because Plaintiff has not overcome the well-established presumption of public access to judicial documents, as governed by the Second Circuit's three-part test for sealing.  First, the documents that Plaintiff seeks to seal unquestionably are "judicial document[s] . . . to which the presumption of public access attaches."  *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 69-70 (2d Cir. 2023) (citation omitted).  Second, the documents were "submitted to a court in connection with a summary-judgment motion" and therefore are

---

[4] Because New York substantive law applies, the cases cited by Plaintiff regarding the treatment of bad-faith claims under Louisiana substantive law are inapposite.  *See* Pl. Opp. at 4-5 (citing, among other cases, *Durio v. Horace Mann Ins. Co.*, 2011-0084 (La. 10/25/11), 74 So.3d 1159; *Wegener v. Lafayette Ins. Co.*, 2010-0810, -0811 (La. 03/15/11), 60 So.3d 1220; *Johno v. Doe*, 2015-0737 (La. App. 4 Cir. 03/09/16), 187 So.3d 581; and *Franks v. Liberty Pers. Ins. Co.*, No. 22-cv-02076, 2023 WL 2309819 (W.D. La. Mar. 1, 2023)).

"entitled to a strong presumption of access" that can be overcome by "only the most compelling reasons." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (citation omitted).  Indeed, the figure that Plaintiff seeks to redact – the amount of the premium – was central to Plaintiff's argument that Section 5-1401 does not apply to the Policy.  *See, e.g.*, Pl. Br. at 4.  Third, Plaintiff has not identified sufficient factors that would "legitimately counsel against disclosure" and would offset "the weight properly accorded [to] the presumption of access." *Stafford*, 78 F.4th at 70 (citation omitted).  Even assuming that the size of a premium could be "proprietary business information" justifying nondisclosure in some cases, ECF No. 75 at 1, Defendant evidently does not regard the size of the premium as so qualifying here, given that Defendant itself publicly filed a document disclosing the size of the premium without redaction, *see* Def. RSUF ¶ 11.  Therefore, the Court denies Plaintiff's sealing request.

## CONCLUSION

Defendant's motion for partial summary judgment is GRANTED and Plaintiff's motion for partial summary judgment is DENIED.  Plaintiff's motion to file certain documents under seal is DENIED.  Within **seven (7) days** of this opinion and order, the parties shall submit a joint letter advising the Court as to their proposal on next steps, including whether further summary-judgment briefing would be appropriate or whether this case should promptly proceed to trial.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 71, 74, 75, and 85.  The Clerk of Court is also respectfully directed to unseal – that is, convert to public view, with no restrictions – ECF Nos. 76 and 78 (including attachments).

Dated:  April 17, 2024
        New York, New York

                              SO ORDERED.


                              JENNIFER L. ROCHON
                              United States District Judge