UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAM KRISHANA INC. d/b/a MOTEL 6
SULPHUR,

                Plaintiff,

        -against-

MT. HAWLEY INSURANCE CO.,

                Defendant.

Case No. 1:22-cv-03803 (JLR)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

      Defendant Mt. Hawley Insurance Company ("Defendant" or "Mt. Hawley") moves

under Federal Rule of Civil Procedure ("Rule") 56 for summary judgment on claims brought

by Plaintiff Ram Krishana Inc. d/b/a/ Motel 6 Sulphur ("Plaintiff" or "Ram Krishana") for

breach of contract and violations of Louisiana law.  Dkt. 97.  Mt. Hawley also moves to

exclude Ram Krishana's expert, Jeffrey Major, under *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).  Dkts. 101, 102.  The Court heard oral

argument on these motions on January 21, 2025.  Dkt. 116 ("Oral Arg. Tr.").  For the reasons

set forth below, the Court GRANTS in part and DENIES in part Mt. Hawley's motion for

summary judgment, and DENIES Mt. Hawley's *Daubert* motion.

## BACKGROUND

      Except where noted, the following facts are undisputed and are drawn from the

parties' Rule 56.1 Statements and Responses, *see* Dkt. 98 ("Df. SUF"); Dkt. 106 ("Pl.

RSUF"); Dkt. 107 ("Pl. SUF"); Dkt. 112 ("Df. RSUF"); the declarations of Matthew Campen,

Jiten Zaveri, Peter N. Freiberg, and Michael D. Feiler, Dkt. 100 ("Campen Decl."); Dkt. 105

("Zaveri Decl."); Dkt. 108 ("Freiberg Decl."); Dkt. 113 ("Feiler Decl."); and the exhibits

attached thereto, *see* Dkts. 100-1 to -9, 108-1 to -60, 110-1 to -2, 113-1 to -3.

**I.     Underlying Events**

Ram Krishana is a Louisiana business that owns a property at 2022 Ruth Street,

Sulphur, Louisiana, operated as a Motel 6 (the "Hotel Property").  Zaveri Decl. ¶¶ 2-3.  Ram

Krishana is owned by a married couple, Mukesh and Kailash Zaveri.  Zaveri Decl. ¶ 2.  There

are two buildings on the Hotel Property: a building with sixty rooms, a reception, and

administrative offices (the "Main Building"); and a building with twenty-four hotel suites (the

"Suites Building").  Zaveri Decl. ¶ 3.  There is also a storage shed on the Hotel Property.

Zaveri Decl. ¶ 3.  There is a restaurant at an adjoining address, 2020 Ruth Street, Sulphur,

Louisiana (the "Restaurant Property"), that is owned by ANK Holdings, LLC ("ANK

Holdings"), a Louisiana limited liability company ("LLC") with two members: the same

Mukesh and Kailash Zaveri who own the Hotel Property.  Zaveri Decl. ¶ 4.  Mt. Hawley

issued Ram Krishana an insurance policy covering the Hotel Property and the Restaurant

Property (together, the "Properties"), for the period from June 27, 2020, to June 27, 2021.  *See*

Dkt. 100-2 (the "Policy") at 1; Zaveri Decl. ¶¶ 4-5; Pl. RSUF ¶ 3.

The Policy's Building and Personal Property Coverage Form contains, among others,

the following Loss Conditions that are relevant here:

> **2.     Appraisal**
> If we and you disagree on . . . the amount of loss, either may make
> written demand for an appraisal of the loss.  In this event, each party will
> select a competent and impartial appraiser.  The two appraisers will select
> an umpire.  If they cannot agree, either may request that selection be
> made by a judge of a court having jurisdiction.  The appraisers will state
> separately the value of the property and amount of loss.  If they fail to
> agree, they will submit their differences to the umpire.  A decision agreed
> to by any two will be binding.  Each party will:
> **a.**     Pay its chosen appraiser; and
> **b.**     Bear the other expenses of the appraisal and umpire equally.
> If there is an appraisal, we will still retain our right to deny the claim.

**3.**    **Duties In The Event Of Loss Or Damage**

    **a.**    You must see that the following are done in the event of loss or damage to Covered Property:

        . . . .

        **(7)**    Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

. . . .

**4.**    **Loss Payment**

    **a.**    In the event of loss or damage covered by this Coverage Form, at our option, we will either:

        **(1)**    Pay the value of lost or damaged property;

        **(2)**    Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

        **(3)**    Take all or any part of the property at an agreed or appraised value;

        **(4)**    Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

        . . . .

    **b.**    The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

Policy § E(2), (3)(a)(7), (4)(a)(1)-(4), (4)(b).

The Policy also sets forth replacement cost coverage for the insured buildings.  *See* Policy § G ("If shown as applicable in the Declarations, the following Optional Coverages[, including Replacement Cost,] apply separately to each item."); Policy, Specified Limits Endorsement at 1-2 (listing replacement cost coverage for building insurance).  The Replacement Cost provision provides, among other things, that replacement cost, "without deduction for depreciation," "replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form," Policy § G(3)(a), and that:

    **c.**    You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.  In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides you if you notify us of your intent to do so within 180 days after the loss or damage.

    **d.**    We will not pay on a replacement cost basis for any loss or damage:

|      |                                                                          |
|------|--------------------------------------------------------------------------|
| **(1)** | Until the lost or damaged property is actually repaired or replaced; and |
| **(2)** | Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage. |

Policy § G(3)(c), (3)(d)(1)-(2).

On August 27, 2020, Ram Krishana notified Mt. Hawley of a claim for damage to the Properties caused by Hurricane Laura. Pl. RSUF ¶ 1; Campen Decl. ¶ 2; Dkt. 100-1 (notice of claim). On August 28, 2020, Mt. Hawley retained Engle Martin, a national loss adjusting and claims management company, to inspect the Properties. Df. RSUF ¶ 25; Campen Decl. ¶ 5; Dkt. 108-9 at 4. On September 10, 2020, Engle Martin spoke with Roger Newman, one of Ram Krishana's public adjusters from Disaster Recovery Advocates, who informed Engle Martin that he "estimate[d] the necessary repairs will exceed $2,000,000.00." Dkt. 108-22 at 4. Engle Martin completed an initial inspection of the property on September 30, 2020, and submitted reports to Mt. Hawley on October 14, 2020 (which included Mr. Newman's loss estimate), November 9, 2020, and December 21, 2020. Df. RSUF ¶ 26; *see* Dkt. 108-20 (Engle Martin initial investigation report); Dkt. 108-22 (Engle Martin first report); Dkts. 108-23 to 108-30 (Engle Martin second report); Dkts. 108-31 to 108-54 (Engle Martin third report). Mt. Hawley also "hired and retained JS Held," a building consultant, "to help with the adjustment of th[e] claim." Dkt. 108-1 ("Campen Dep. Tr.") 22:19-23:1. During this time, on October 10, 2020, the Properties were further damaged by Hurricane Delta. Zaveri Decl. ¶ 9.

On or about December 14, 2020, Mt. Hawley made a $250,000 payment to Ram Krishana "as an advance on [its] claim." Campen Decl. ¶ 4; *see* Df. RSUF ¶ 33. In connection with that payment, Mt. Hawley requested that Ram Krishana "execute a partial proof of loss, which specifically indicated that it was a 'partial' proof of loss, that the amount of loss or damage was 'Not Yet Determined,' and that it was simply for a 'general advance

payment.'"  Campen Decl. ¶ 4; Dkt. 100-3 ("Partial Proof of Loss").  Mt. Hawley filled out the Partial Proof of Loss and submitted it to Ram Krishana for execution.  Oral Arg. Tr. 16:8-21.  Mt. Hawley required that Ram Krishana return the partial proof of loss form "before it would issue the . . . advance[] payment of $250,000."  Campen Dep. Tr. 34:11-35:8.  On December 14, 2020, Ram Krishana submitted the sworn, signed Partial Proof of Loss to Mt. Hawley.  Dkt. 100-3.  Mt. Hawley issued subsequent payments to Ram Krishana of $18,664.21 on December 22, 2020, and $46,376.35 on April 16, 2021.  Zaveri Decl. ¶ 11; Campen Dep. Tr. 35:9-17.  Mt. Hawley did not require additional proofs of loss for those payments.  Campen Dep. Tr. 35:9-17; Df. RSUF ¶ 34.

On January 5, 2021, Ram Krishana's counsel informed Mt. Hawley that it was completing its investigation "and will be sending you an additional Satisfactory Proof of Loss."  Dkt. 100-4 at 1; Pl. RSUF ¶ 6.  But Ram Krishana did not submit an additional proof of loss form.  Pl. RSUF ¶ 6; Campen Decl. ¶ 6.  On January 27, 2021, Mt. Hawley's independent adjusters emailed Ram Krishana's counsel and public adjusters, requesting that they review the attached estimates and "provide any estimates to us from Roadrunner Restoration," a company Ram Krishana retained to review certain reports and prepare an estimate of repair.  Dkt. 100-5 at 1-2; *see also* Campen Decl. ¶ 7; Campen Dep. Tr. 55:22-56:10 (explaining that Roadrunner Construction was "the mitigation contractor that was hired to mitigate the water damages in the building").  Mt. Hawley also renewed a previous "Request for Information" related to "any additional detail and information for further review and consideration by Mt. Hawley."  Dkt. 100-5 at 2; *see also* Campen Decl. ¶ 7.  Ram Krishana did not respond to the email, though Mt. Hawley did receive an estimate for water mitigation work from Roadrunner Construction and had previously been informed by Ram Krishana's public adjuster that he estimated the necessary repairs from Hurricane Laura would

exceed $2,000,000.  Campen Decl. ¶ 7; Pl. RSUF ¶ 7; Dkt. 108-22 at 4; *see* Campen Dep. Tr. 55:22-56:10; Dkt. 100-5 at 1 (email to Disaster Recovery Advocates, among others, referencing "Xactimate estimate & 'Sketch' provided to date from Roadrunner").

On May 24, 2021, counsel for Ram Krishana contacted Mt. Hawley to inform it that Ram Krishana was invoking appraisal.  Pl. RSUF ¶ 8; *see* Dkt. 100-6 at 2.  The letter noted that "[d]ue to the amount of time that has lapsed since Hurricanes Laura and Delta, it is clear Mt. Hawley Insurance Company . . . and its Insured dispute the amount of the loss."  Dkt. 100-6 at 1.  The letter further stated that "[b]ased on the clear damage to the [Properties] and the inadequate payments made thus far, demand is hereby made for the full Building Policy Limits to be tendered as an undisputed payment.  If full Building Policy Limits are not immediately tendered, a dispute of the amount of the loss exists and the parties are at [an] impasse."  *Id.*  On June 21, 2021, counsel for Mt. Hawley responded, stating that Mt. Hawley "disagree[d] in the strongest terms possible with [the] suggestion that it has somehow failed to make timely payments," and wrote "to seek clarification from [Ram Krishana] regarding the insured's demand for appraisal," since the "correspondence does not set forth the Insured's contention regarding the amount of loss or provide any information or documentation that would allow Mt. Hawley to understand what the Insured's contention is regarding that number."  Dkt. 100-7 at 1.  Mt. Hawley also reiterated previous requests for documentation, including work performed by Roadrunner Restoration and files with moisture level information, and requested that Ram Krishana "provide a signed, sworn proof of loss."  *Id.* at 1-2.  The letter enclosed a proof of loss form.  *Id.* at 3-4.  Mt. Hawley contacted Ram Krishana again on August 25, 2021, "to follow up regarding the clarification and supporting materials, and signed, sworn proof of loss" requested in the June 21, 2021 correspondence, noting that to date, Mt. Hawley had "received no response."  Dkt. 100-8; Pl. RSUF ¶ 11.

Other than the earlier December 14, 2020 Partial Proof of Loss, Ram Krishana did not submit any additional proofs of loss.  *See* Pl. RSUF ¶ 6 ("[U]ndisputed that Ram Krishana did not submit an additional proof of loss form after the proof of loss form it submitted in December 2020.").

In the meantime, Ram Krishana performed repairs to the roof of the Main Building and some repairs to the Suites Building, both on the Hotel Property.  Zaveri Decl. ¶¶ 8, 10. Ram Krishana spent approximately $1,600,000 repairing the Hotel Property, most of which was spent making repairs to the Suites Building.  Zaveri Decl. ¶ 10.  Ram Krishana has not completed its repairs to the Hotel Property.  Df. RSUF ¶¶ 42-43; Pl. RSUF ¶ 21; Zaveri Decl. ¶ 12.  Ram Krishana completed minimal, if any, repairs to the Restaurant Property, and it was sold "in the condition that it was in essentially immediately after the [hurricanes]" to an "unrelated entity."  Dkt. 100-9 ("Zaveri Dep. Tr.") 54:20-55:1 (corporate representative for Ram Krishana did not "think" that there had been "any work done to the restaurant building at all since Hurricane Laura and/or Delta"); *see* Zaveri Dep. Tr. 92:12-17, 90:9-15, 92:1-11.

## II.   Procedural History

On August 27, 2021, Ram Krishana brought suit against Mt. Hawley in the United States District Court for the Western District of Louisiana, alleging claims for breach of contract and violations of Louisiana law.  *See* Dkt. 1 ("Compl.").  On December 28, 2021, Mt. Hawley answered the Complaint and filed a motion under 28 U.S.C. § 1404(a) to transfer the case to this District based on the Policy's forum-selection clause.  Dkts. 17-18.  The Louisiana district court denied the motion.  Dkt. 29.  Mt. Hawley then petitioned the Fifth Circuit for a writ of mandamus "to enforce a mandatory forum selection clause contained in the [Policy]." Dkt. 30 at 9.  The Fifth Circuit granted Mt. Hawley's petition, whereupon the case was transferred to this District and assigned to the undersigned on September 27, 2022.  Dkt. 41.

Following the close of discovery, the parties submitted cross-motions for partial summary judgment on the issue of choice of law. *See* Dkts. 71 to74, 77 to 84. On April 17, 2024, the Court granted Mt. Hawley's motion and denied Ram Krishana's motion, holding that New York law applies to Ram Krishana's claims based on the choice-of-law clause in the Policy. *Ram Krishana, Inc. v. Mt. Hawley Ins. Co.*, No. 22-cv-03803 (JLR), 2024 WL 1657763, at *1, *3 (S.D.N.Y. Apr. 17, 2024) ("*Ram Krishana I*").

On June 28, 2024, Mt. Hawley filed the instant motion for summary judgment on both claims contained in the Complaint. Dkt. 97; *see* Dkt. 99 ("MSJ Br.). On July 12, 2024, Mt. Hawley filed a *Daubert* motion to exclude the testimony of Plaintiff's expert, Jeffrey Major. Dkt. 101, *see* Dkt. 102 ("Daubert Br."). Both motions are fully briefed. *See* Dkt. 104 ("MSJ Opp."); Dkt. 111 ("MSJ Reply"); Dkt. 109 ("Daubert Opp."); Dkt. 114 ("Daubert Reply"). The Court held oral argument on both motions on January 21, 2025. *See* Oral Arg. Tr.

The Court will first address Mt. Hawley's motion for summary judgment before turning to its *Daubert* motion.

## MOTION FOR SUMMARY JUDGMENT

Mt. Hawley moves for summary judgment on both claims in the Complaint. Dkt. 97. The parties agree, and confirmed at oral argument, that the second claim against Mt. Hawley for violations of Louisiana law, should be dismissed, *see* MSJ Br. at 10; MSJ Opp. at 10; Oral Arg. Tr. 19:21-21:1 (parties agreeing that the Louisiana statutory claims are "no longer on the table"), and therefore the Court will dismiss Plaintiff's Louisiana law claims with prejudice. Plaintiff's remaining claim is for breach of contract arising out of Mt. Hawley's failure to timely pay Ram Krishana funds owed under the Policy for losses arising from Hurricanes Laura and Delta. Compl. ¶¶ 33-37. Mt. Hawley advances three arguments in support of its motion for summary judgment on this claim, and the Court will address each in turn.

Pursuant to the Court's previous decision in *Ram Krishana I*, the Court applies New York substantive law to Ram Krishana's claims. *See* 2024 WL 1657763, at *5.

## I.    Summary Judgment Legal Standard

Under Rule 56, a moving party is entitled to summary judgment if, on any claim or defense, the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law.' A dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rosen v. UBS Fin. Servs. Inc.*, No. 22-cv-03880 (JLR), 2023 WL 6386919, at *4 (S.D.N.Y. Sept. 29, 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *JTRE Manhattan Ave. LLC v. Capital One, N.A.*, No. 21-cv-05714 (JLR), 2024 WL 3227010, at *8 (S.D.N.Y. June 27, 2024).

In ruling on a motion for summary judgment, "the court must view all evidence in the light most favorable to the non-moving party, and resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* (internal quotation marks omitted) (citation omitted). To defeat a motion for summary judgment, the nonmoving party must advance more than "a scintilla of evidence," *Liberty Lobby*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## I.    Proof of Loss

Mt. Hawley first contends that Ram Krishana's breach of contract claim is barred by Ram Krishana's failure to submit a signed proof of loss form setting forth its amount of loss,

as required by the Policy, and that the Partial Proof of Loss does not satisfy the Policy's requirements.  MSJ Br. at 9-10.

The Policy here requires the insured to submit "a signed, sworn proof of loss containing the information [Mt. Hawley] request[s] to investigate the claim" within sixty days of Mt. Hawley's request for such a form.  Policy § E(3)(7).  New York law provides that:

> The failure of any person insured against loss or damage to property under any contract of insurance . . . to furnish proofs of loss to the insurer . . . as specified in the contract shall not invalidate or diminish any claim of such person insured under such contract, unless such insurer . . . shall, after such loss or damage, give to such insured a written notice that it or they desire proofs of loss to be furnished by such insured to such insurer . . . on a suitable blank form or forms.  If the insured shall furnish proofs of loss within sixty days after the receipt of such notice and such form or forms, or within any longer period of time specified in such notice, such insured shall be deemed to have complied with the provisions of such contract of insurance relating to the time within which proofs of loss are required.

N.Y. Ins. Law § 3407(a) (McKinney 2024).  "[F]ailure of the insured to file proof of loss within [the specified time period] is an absolute defense to an action on the policy, absent waiver of the requirement by the insurer or conduct on its part estopping its assertion of the defense."  *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 381 F. Supp. 2d 250, 259 (S.D.N.Y. 2005) (second alteration in original) (quoting *Igbara Realty Corp. v. N.Y. Prop. Ins. Underwriting Ass'n*, 470 N.E.2d 858, 860 (N.Y. 1984)).  "This defense is only available if the insurer gives the insured 'written notice that it desires . . . a proof of loss and furnishes the insured with suitable blank proof of loss forms.'"  *Starikovsky v. State Farm Fire & Cas. Co.*, 737 F. Supp. 3d 164, 169 (S.D.N.Y. 2024) (quoting *Arthur I. Fishman, Inc. v. Hanover Ins. Co.*, No. 93-cv-05515 (JFK), 1994 WL 376040, at *2 (S.D.N.Y. July 19, 1994)).

It is undisputed that on December 14, 2020, Ram Krishana filed a signed, sworn partial proof of loss form within sixty days of Mt. Hawley's request.  Pl. RSUF ¶ 4; Campen Decl. ¶ 4; Dkt. 100-3.  The Partial Proof of Loss executed by Ram Krishana was the form sent

and pre-filled by Mt. Hawley.  Oral Arg. Tr. 16:8-21.  Mt. Hawley argues that the Partial

Proof of Loss does not satisfy the Policy's proof of loss requirement because the Partial Proof

of Loss did not set forth the full and complete amount of Ram Krishana's loss.  MSJ Br. at

9-10.  The Court disagrees that Ram Krishana's failure to file an additional proof of loss form

bars its claim.

      The First Department's decision in *Charlton v. United States Fire Insurance Co.,* 636

N.Y.S.2d 335 (App. Div. 1996), guides this Court's conclusion.  In *Charlton*, the New York

Supreme Court considered whether an insurance policy with a similar proof of loss

requirement required the submission of multiple proofs of loss.  627 N.Y.S.2d 221, 222-24

(Sup. Ct. 1995), *aff'd*, 636 N.Y.S.3d 355.  The insureds submitted two proofs of loss in

connection with checks issued by the insurer for $65,000 and $50,000.  *Id.* at 222.

Subsequently, the insurer issued two additional proof of loss forms to the insureds, filled out

by the insurer in the amounts of $111,854 and $128,641, which the insureds rejected as

inadequate and never executed.  *Id.* at 222-23.  The insurer sent a subsequent set of blank

proofs of loss, which the insureds again did not file.  *Id.* at 223.  As here, the insurer asked the

court to bar the insureds' claims for failure to file additional proofs of loss beyond the initial

ones that were filed.  *Id.*  The New York Supreme Court rejected the insurer's argument that

the plaintiff-insureds could not maintain the action because they had not filed the subsequent

proof of loss forms, reasoning that plaintiffs had "filed proofs of loss in connection with the

receipt of the preliminary payments from defendants," which the insurer accepted, and

"[n]either the insurance policy nor the statute require the filing of more than one proof of

loss."  *Id.* at 223-24.  The Appellate Division thereafter affirmed, holding that the New York

Supreme Court had "appropriately determined that nothing in either the Insurance Law or the

policy herein required the insureds to file more than one proof loss."  636 N.Y.S.2d at 336.

Ram Krishana likewise timely submitted an initial signed, sworn Partial Proof of Loss in connection with the receipt of Mt. Hawley's advance payment of $250,000, in the form provided by Mt. Hawley, and which Mt. Hawley accepted.   The Policy requires "**a** signed, sworn proof of loss" within sixty days of Mt. Hawley's request, Policy § E(3)(a)(7) (emphasis added), and Mt. Hawley identifies no policy language — nor provision of New York law — requiring the submission of additional proofs of loss.  Ram Krishana also provided additional information regarding its loss: Mt. Hawley received an estimate from Roadrunner Restoration, Ram Krishana's mitigation contractor, *see* Campen Dep. Tr. at 55:14-56:10, the estimate from Ram Krishana's public adjuster that "the necessary repairs w[ould] exceed $2,000,000.00," Dkt. 108-22 at 4; *see also* Oral Arg. Tr. at 17:16-23, as well as Ram Krishana's position, stated in its appraisal letter, that the "full Building Policy Limits" were properly due based on the "devastating amount of damage to the Insured Hotel," Dkt. 100-6 at 1.  Thus, as in *Charlton*, Ram Krishana's claim is not barred for failure to file an additional proof of loss.

Mt. Hawley's attempts to distinguish *Charlton* are unavailing.  First, Mt. Hawley argues that there is "no indication" that the proofs of loss submitted by the insured party in *Charlton* were designated as "partial," MSJ Br. at 9-10; *see also* Oral Arg. Tr. 5:15-7:1 (similar).  The Court does not find this argument persuasive given that, as here, the proofs of loss in *Charlton* were submitted "in connection with the receipt of the *preliminary* payments from defendants" and did not cover latter sums allegedly due under the policy.  627 N.Y.S.2d at 224 (emphasis added).  Mt. Hawley also characterizes *Charlton* as an outlier case — a "three-page opinion that has never been followed or even cited by any other New York court." MSJ Br. at 9.  Regardless of the length of the opinion, the Court is guided by Appellate Division decisions on questions of New York law, absent an indication that the Court of

12

Appeals has held or would hold otherwise. *See E. Fork Funding LLC v. U.S. Bank*, 118 F.4th 488, 497 (2d Cir. 2024) (rulings from state intermediate appellate court are "a basis for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise" (citation omitted)).  The First Department considered facts similar to those present here and affirmed the lower court's holding that additional proofs of loss were not required under the policy or Insurance Law.  636 N.Y.S.2d at 336.[1]

Other courts have also followed a similar approach to *Charlton*.  In *Hewlett-Packard Co. v. Factory Mutual Insurance Co.*, for example, the court found that a sworn partial proof of loss satisfied the insurance policy's proof of loss requirement.  *See* No. 04-cv-02791 (TPG), 2007 WL 983990, at *8 (S.D.N.Y. Mar. 30, 2007).  In that case, the insurance policy required the insured to "[g]ive a signed and sworn proof of loss to this Company within 90 days after the loss" with "the knowledge and belief of the insured" as to certain information, including the amount of loss.  *Id.* at *6-7.  Just as in the present case, the insured submitted a sworn proof of loss, which it called a "partial proof of loss," and the insurer accepted it.  *Id.* at *8.  Again, like here, additional information about the loss was provided to the insurer but no

---

[1] Insurance treatises have also pointed to *Charlton* in characterizing insurance law in New York.  *See, e.g.*, 13 *Couch on Insurance* § 189:47 (3d ed.) (citing to *Charlton* and stating "[e]xcept for policies covering injuries requiring periodic confirmation of physical condition, such as disability policies, an insured is generally required to submit only one proof of loss"); 31 *New York Practice Series — New York Insurance Law* § 30:38 (2024-2025 ed.) (citing to *Charlton* and stating "so long as the insured has filed a timely proof of loss, the insurer cannot disclaim coverage based on the insured's failure to comply with its requests to file additional forms of proof of loss, where nothing in either the Insurance Law or the policy therein requires the insured to do so"); 70A *New York Jurisprudence — Insurance* § 2062 (2d ed.) ("[I]nsurer is not entitled to a summary judgment based on the insureds' failure to respond to a demand for additional proofs of loss where it has accepted proofs of loss filed by the insureds in connection with their receipt of preliminary insurance payments, and neither the insurance policy nor the applicable statute requires the filing of more than one proof of loss.").

further sworn proofs of losses were provided. *Id.* at *7. The insurer raised an affirmative

defense that the insured failed to submit timely proof of loss. *Id.* at *6. The court struck the

affirmative defense, holding that the partial proof of loss satisfied the insurance policy's

requirement to submit a sworn proof of loss because it complied with the "literal requirement

of the policy as to a sworn proof of loss," even if it was not a full proof of loss. *Id.* at *8. So

too here. Mt. Hawley is not entitled to the drastic remedy of dismissal of Ram Krishana's

claims given Ram Krishana's provision of some loss information and compliance with the

literal requirement of the timely filing of a sworn proof of loss. *See Charlton*, 627 N.Y.S.2d

at 224 (failure to provide additional proofs of loss did not "require the severe sanction of

dismissal of the action").

Mt. Hawley relies entirely on cases in which the insured failed to timely file a signed,

sworn proof of loss *at all*, and conceded at oral argument that it had not been able to find a

single case barring an insured's claim where the insured did not submit additional proofs of

loss after submitting an initial signed, sworn preliminary or partial proof of loss. *See* Oral

Arg. Tr. 9:2-6; MSJ Br. at 8-9 (collecting cases); *see, e.g.*, *Converse v. State Farm Fire &

Cas. Co.*, 681 F. Supp. 3d 4, 20, 23 (N.D.N.Y. 2023) (insured's claim was barred because it

returned sworn proof of loss statement after deadline); *Anthony Marino Constr. Corp. v. INA

Underwriters Ins. Co.*, 505 N.E.2d 944, 944-45 (N.Y. 1987) (same); *Finley v. Erie & Niagara

Ins. Ass'n*, 79 N.Y.S.3d 796, 797-98 (App. Div. 2018) (same); *Stopani v. Allegany Co-Op Ins.

Co.*, 920 N.Y.S.2d 559, 561 (App. Div. 2011) (same); *Bailey v. Charter Oak Fire Ins. Co.*,

709 N.Y.S.2d 696, 697 (App. Div. 2000) (same); *Bydeskuthy v. Hanover Ins. Co.*, 644

N.Y.S.2d 783, 783 (App. Div. 1996) (same); *Vena v. State Farm Fire & Cas. Co.*, 610

N.Y.S.2d 410, 410-11 (App. Div. 1994) (same); *Pioneer Ins. Co. v. Deleo*, 563 N.Y.S.2d 356,

357-58 (App. Div. 1990) (same); *Brostowin v. Hanover Ins. Co.*, 546 N.Y.S.2d 4, 5 (App.

14

Div. 1989); *N.Y. Prop. Ins. Underwriting Ass'n v. Primary Realty Inc.*, 561 N.Y.S.2d 182, 182-83 (App. Div. 1990) (insured submitted unsworn proofs of loss before 60-day period, but submitted sworn proofs beyond the deadline; untimely submission barred insured's claim).

The Court's conclusion is further supported by the fact that even deficient proofs of claim with "inadequate responses" that were rejected by the insurer — unlike here — have been held to comply with policy requirements to timely submit a sworn proof of loss. *See Yaccarino v. St. Paul Fire & Mar. Ins. Co.*, 542 N.Y.S.2d 660, 661 (App. Div. 1989) (rejecting the insured's affirmative defense for failure to timely file a proof of loss even though the proof of loss was deficient and contained "improper responses" because it was sworn and timely filed within the requisite sixty days); *Kenneth v Nationwide Ins. Co.*, No. 03-cv-00521, 2007 WL 3533887, at *7 (W.D.N.Y. Nov. 13, 2007) (refusing to bar insured's claim where sworn proof of loss was timely filed even though it was rejected for being "so grossly deficient as to preclude Nationwide from determining its rights and liabilities under the policy"). This is because "substantial rather than strict compliance with the provisions for proof of loss statements is all that is required," and "notice and proof requirements are liberally construed in favor of the insured." *Yaccarino*, 542 N.Y.S.2d at 661.

The Court likewise rejects Mt. Hawley's argument that Ram Krishana's failure to submit an additional "complete" signed, sworn proof of loss in connection with its appraisal request is a bar to coverage. MSJ Br. at 9-10. There is no separate proof of loss requirement in the Policy for the appraisal process, as conceded by Mt. Hawley at oral argument, *see* Oral Arg. Tr. at 10:18-11:10 (the Policy "doesn't say that" Mt. Hawley "need[s] to have a proof of loss so [it] can follow through on the appraisal process"), and the appraisal provision requires only that the insurer and insured "disagree on the value of the property or the amount of the loss," Policy § E(2). Ram Krishana's letter invoking appraisal informed Mt. Hawley that it

15

"dispute[d] the amount of the loss" because the "$250,000.00 in policy benefits [provided] to [Ram Krishana] . . . [were] inadequate to complete the necessary covered repairs," and made a demand for the "full Building Policy Limits to be tendered as an undisputed payment."  Dkt. 100-6 at 1.  This satisfactorily informed Mt. Hawley that there was a disagreement as to the amount of loss and provided information regarding the loss amount.

For all of these reasons, Mt. Hawley is not entitled to summary judgment on Ram Krishana's breach of contract claim.

## II.    Insurable Interest

Mt. Hawley next contends that Ram Krishana is not entitled to recovery for the Restaurant Property because Ram Krishana lacks an insurable interest in that property.  MSJ Br. at 13.

It is undisputed that Ram Krishana purchased insurance for the Restaurant Property on its policy.  However, under New York law, an entity must have an "'insurable interest' in the property it insures." *Zurich Am. Ins. Co. v. ABM Indus., Inc.*, 397 F.3d 158, 167 (2d Cir. 2005) (citation omitted); *see* N.Y. Ins. Law § 3401 (McKinney 2024) (no insurance policy on property "shall be enforceable except for the benefit of some person having an insurable interest in the property insured"; insurable interest includes "any lawful and substantial economic interest in the safety or preservation of property from loss, destruction, or pecuniary damage").  "[A] person has an insurable interest in a property whenever he or she would profit by or gain some advantage from the property's continued existence or suffer some loss or disadvantage by its destruction," but "[t]he interest must be of such a character that the destruction of the property will have a direct, and not a mere remote or consequential, effect on it." *Azzato v. Allstate Ins. Co.*, 951 N.Y.S.2d 726, 733 (App. Div. 2012) (second alteration in original) (quoting 3 *Couch on Insurance* 3d § 41:11 (3d ed.)).  To determine whether an

insurable interest exists, courts look to see whether the entity asserting the insurable interest "would profit by or gain some advantage from the property's continued existence or suffer some loss or disadvantage by its destruction," though "[m]ere possession or license to use the property is insufficient to support an insurable interest where the insured would experience no direct economic loss by its destruction." *Id.* (quoting 3 *Couch on Insurance* § 41:11 (3d ed.)).

Mt. Hawley contends that Ram Krishana lacks an insurable interest in the Restaurant Property because that property is not owned by Ram Krishana but instead was owned by a separate entity, ANK Holdings. MSJ Br. at 13-14. According to Mt. Hawley, Ram Krishana's lack of an insurable interest in that property renders the Policy's coverage of the Restaurant Property void and unenforceable. *Id.* The Court agrees.

The parties do not dispute that Ram Krishana did not own or possess the Restaurant Property. *See* Zaveri Decl. ¶ 4; Df. RSUF ¶ 37. Instead, Ram Krishana contends that it has an insurable interest in the Restaurant Property because: (1) there was common ownership between ANK Holdings, the entity that owned the Restaurant Property at the time Ram Krishana obtained the Policy, and Ram Krishana; (2) Ram Krishana obtained coverage for the Restaurant Property because ANK Holdings' mortgage required insurance; and (3) there is a "close connection" between the two properties because the "only" entrance to the Hotel Property runs through the Restaurant Property. MSJ Opp. at 11. Finally, Ram Krishana argues that Mt. Hawley is estopped from relying on the insurable interest doctrine because it agreed to insure the Restaurant Property and could have determined whether Ram Krishana had an insurable interest before issuing the Policy. *Id.* at 12. The Court addresses each argument in turn.

Ram Krishana first asserts that it has an insurable interest in the Restaurant Property because its two owners — the Zaveris — are also the members of ANK Holdings, the LLC

that owns the Restaurant Property. This ownership structure does not create an insurable interest for Ram Krishana in the Restaurant Property. Under New York law, "[a] corporation has a separate legal entity from its owners," *Open Door Foods, LLC v. Pasta Machines, Inc.*, 25 N.Y.S.3d 357, 359 (App Div. 2016), and Ram Krishana, the corporation and policy holder, does not have any ownership interest in the Restaurant Property even if its owners may. While New York law does not require a "legal or equitable interest in the property" to establish an insurable interest, *Weissman v. Galway Constr. Corp.*, 659 N.Y.S.2d 42, 43 (App. Div. 1997), Ram Krishana, the corporation, also would not "profit by or gain some advantage from the property's continued existence or suffer some loss or disadvantage by its destruction," *Azzato*, 951 N.Y.S.2d at 733 (citation omitted), just because its owners may be impacted. Indeed, Ram Krishana conceded at oral argument that it could not cite to a single case in which the common ownership of two corporate entities created an insurable interest for one corporate entity in property owned by the other, *see* Oral Arg. Tr. 27:15-21.

Ram Krishana's reliance on *Sam Ash Music Corp. v. Liberty Mutual Fire Insurance Co.*, 606 N.Y.S.2d 197 (App. Div. 1994), is misplaced. In *Sam Ash*, the plaintiff, a family-owned company, operated a store under common management with a subtenant affiliated corporation, paying the store's employees and undertaking maintenance and repair for the store. *Id.* at 198. Plaintiff was listed on the policy, as was the subtenant. *Id.* The court found that the family-owned company had an insurable interest in the property because "it suffered pecuniary loss and damage from the destruction of its improvements and betterments in a fire." *Id. Sam Ash* bears little similarity to the case at bar, where Ram Krishana has no ownership interest in the Restaurant Property, did not manage the Restaurant Property or its employees, and did not undertake maintenance and repair for the Restaurant Property. Ram Krishana has adduced no evidence supporting an inference that the corporation Ram Krishana

"suffered pecuniary loss and damage" from damage to the Restaurant Property, *id.*, or that it otherwise stood to suffer economic loss from the Restaurant Property's destruction, *see Azzato*, 951 N.Y.S.2d at 733. As a consequence, *Sam Ash* does not support a finding that Ram Krishana has an insurable interest in the Restaurant Property by virtue of any "affiliated" ownership it has in common with ANK Holdings.

The fact that Ram Krishana obtained coverage for the Restaurant Property through the Policy because ANK Holdings' mortgage on the Restaurant Property required property insurance, *see* Zaveri Decl. ¶ 6, similarly does not establish that Plaintiff had an insurable interest in the Restaurant Property. *DeBagio v. Metropolitan Casualty Insurance Co.*, No. 14-cv-00161, 2017 WL 11682781 (N.D.N.Y. Mar. 31, 2017), is instructive. The *DeBagio* plaintiff contended that he had an insurable interest in a vehicle owned by another because he procured insurance for it and paid insurance premiums on the policy. *Id.* at *3. The court rejected his argument, reasoning that plaintiff had "no connection" to the vehicle besides "procuring the insurance and paying the insurance premiums," since he did not possess or own the vehicle, did not have the vehicle registered in his name, did not contribute to the purchase price of the vehicle, and did not utilize the vehicle in any meaningful way. *Id.* Here too, Ram Krishana did not own the Restaurant Property at the time it procured the Policy, *see* Zaveri Decl. ¶ 4, and has adduced no evidence that it otherwise possessed the Restaurant Property, contributed to its purchase price, or utilized it in any meaningful way. As a result, the fact that Ram Krishana obtained insurance coverage for the Restaurant Property does not establish the existence of an insurable interest.

Ram Krishana also argues that that it has a "close connection" with and therefore an insurable interest in the Restaurant Property because the "only access" to the Hotel Property is a driveway that runs through the Restaurant Property. MSJ Opp. at 11; *see* Zaveri Decl. ¶ 4.

Mt. Hawley disputes that this is the case, Df. RSUF ¶ 37; MSJ Reply at 7-8, and points to the real property records on file in the parish, *see* Dkts. 113-1, 113-2, 113-3.  The Court need not reach the question of whether a sole means of access is enough to create an insurable interest because Ram Krishana deviated from its brief during oral argument and conceded that there were other ways to access the Hotel Property than through the Restaurant Property.  Oral Arg. Tr. 24:15-19.

Finally, Ram Krishana argues that Mt. Hawley is estopped from relying on the insurable interest doctrine because it agreed to insure the Restaurant Property and could have determined when placing the insurance whether Ram Krishana had an insurable interest in the Restaurant Property.  MSJ Opp. at 12.  However, New York courts have held that an insurer is not estopped from relying on the insurable interest doctrine where they have accepted premiums but later deny liability, since "[l]egally the insurer is under no obligation to investigate the title to its policy holders' [property]; and in the absence of such a duty, no estoppel can be created by the failure to so investigate."  *Friscia v. Safeguard Ins. Co.*, 293 N.Y.S.2d 695, 699 (N.Y. Civ. Ct. 1968); *see* 6 *Couch on Insurance* § 82:17 (3d ed.) ("Generally, an insurer has no duty to investigate a representation the veracity of which it has no reason to doubt . . . ."); *John Hancock Life Ins. Co. v. Perchikov*, 553 F. Supp. 2d 229, 239 (E.D.N.Y. 2008) (under New York law, "[a]n insurer is not required to verify or investigate information provided by an insured" (quoting *Chicago Ins. Co. v. Kreitzer & Vogelman*, 265 F. Supp. 2d 335, 344 (S.D.N.Y. 2003)); *cf. Assicurazioni Generali, SPA v. Terranova*, No. 83-cv-01490 (JFK), 1988 WL 83383, at *3 (S.D.N.Y. Aug. 2, 1988) (holding that insurer was not required to investigate ownership upon issuing insurance policy and was thus not estopped from enforcing the policy's sole ownership condition (citing *Friscia*, 293 N.Y.S.2d at 699)).  There is no suggestion in the record — or even argument by Ram Krishana — that Mt.

Hawley knew or had reason to know of Ram Krishana and ANK Holdings' ownership structure or Ram Krishana's relationship, or lack thereof, with the Restaurant Property. Mt. Hawley is entitled to rely on the representations in the policy application absent any reason to doubt their veracity. *See* 6 *Couch on Insurance* § 82:17 (3d ed.); Oral Arg. Tr. 23:6-15. Thus, Mt. Hawley is not estopped from relying on the insurable interest doctrine.

Because Mt. Hawley has established as a matter of law that Ram Krishana lacks an insurable interest in the Restaurant Property, the Court grants summary judgment in Mt. Hawley's favor and finds that Ram Krishana may not recover for damages to the Restaurant Property.

## III.    Replacement Cost

Finally, Mt. Hawley moves for summary judgment on Ram Krishana's claim for replacement costs for repairs to the Main Building, the laundry building, and the Restaurant Property, MSJ Br. at 15, because replacement cost coverage is not available unless and "until the damaged property is actually repaired or replaced," *id.* at 14. As a threshold matter, Ram Krishana does not have an insurable interest in the Restaurant Property, *see supra* pp. 16-21, and therefore the Court need not determine whether particular coverages, including replacement cost coverage, is available to Ram Krishana. Therefore, the Court will address this argument only with respect to the Hotel Property. Mt. Hawley clarified at oral argument that it is seeking summary judgment only on the replacement cost claims by Ram Krishana for repairs that Ram Krishana has not done. In other words, Mt. Hawley is not seeking summary judgment on Ram Krishana's claims for repair and replacement costs it has already incurred, namely, the approximately $1,600,000 spent largely on making repairs to the Suites Building and replacing the roof of the Main Building. Rather, Mt. Hawley moves for summary judgment to bar recovery of replacement costs for repairs it has not yet made (primarily to the

Main Building). *See* Oral Arg. Tr. 30:9-31:24 (clarifying that Mt. Hawley's summary judgment motion as to replacement costs "does not relate to the [S]uites [B]uilding where [Ram Krishana] ha[s] actually done the work" and its dispute with the $1,600,000 in costs already incurred is based on other coverage arguments to be evaluated at trial).

Under New York law, a policy clause providing that an insurer is "not required to pay any replacement cost until replacement or repairs [are] completed" creates a "condition precedent," and an "insurer ha[s] no obligation to make replacement cost payments until plaintiff ha[s] actually undertaken replacement and incurred the cost." *De Lorenzo v. Bac Agency*, 681 N.Y.S.2d 846, 848 (App. Div. 1998) (citing *Harrington v. Amica Mut. Ins. Co.*, 645 N.Y.S.2d 221 (App. Div. 1996)). The Policy here provides that Mt. Hawley "will not pay on a replacement cost basis for any loss or damage: (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." Policy § G(3)(d).

The parties do not dispute that Ram Krishana has not made all of the repairs for which it seeks replacement costs, including to the Main Building. *See* Pl. RSUF ¶ 21; MSJ Br. at 14; MSJ Opp. at 13; Oral Arg. Tr. 31:22-24, 35:8-18. Instead, Ram Krishana argues that (1) it should be entitled to replacement costs for anticipated repairs because the Policy does not require it to complete repairs within a certain time frame in order to claim replacement costs; (2) it has not completed all of the repairs because Mt. Hawley's underpayment of the claim has prevented it from completing repairs; and (3) limiting Ram Krishana to actual cash value would be inequitable. MSJ Opp. at 13-16. The Court addresses each argument in turn.

Even though the Policy requires only that the repairs be made "as soon as reasonably possible after the loss or damage," it also expressly requires damaged property to be repaired or replaced in order for the insured to recover replacement costs. Policy § G(3)(d). Under

New York law, such policy language requires the insured to actually repair or replace the damaged property before making a claim for replacement costs. *See Harrington*, 645 N.Y.S.2d at 225 ("Replacement cost coverage inherently requires a replacement (a substitute structure for the insured) and costs (expenses incurred by the insured in obtaining the replacement); without them, the replacement cost provision becomes a mere wager."); *Sirob Imps., Inc. v. Peerless Ins. Co.*, 958 F. Supp. 2d 384, 385-86, 388 (E.D.N.Y. 2013) (identical policy language required insured to "completely repair or replace the damaged property before making a claim" for replacement costs); *Executive Plaza, LLC v. Peerless Insurance Co.*, No. 09-cv-01976 (LDW), 2010 WL 11632677, at *1, *4 (E.D.N.Y. Feb. 8, 2010) (identical policy language required the insured to make the repairs before making a claim for replacement costs). The lack of a definite time limit in the Policy does not excuse Ram Krishana from the additional requirement that it actually repair or replace the insured property at issue before making a claim for replacement costs for that damage.

Ram Krishana alternatively argues that Mt. Hawley should be responsible for replacement costs because courts have excused the insured from the condition precedent of completing repairs to recover replacement costs where the insurer's actions "hinder[] or prevent[]" the insured from paying repairs. MSJ Opp. at 14; *see id.* at 14-15 (collecting cases). However, Ram Krishana relies on inapposite cases, many from outside of this jurisdiction, where the insurer either failed to pay *any* of the actual cash value or significantly underpaid the actual cash value. *See Zaitchick v. Am. Motorists Ins. Co.*, 554 F. Supp. 209, 217 (S.D.N.Y. 1982) (where "plaintiffs were refused any monies under the insurance contract," defendant's "conduct made it impossible for plaintiffs to fulfill the condition precedent, and therefore, excuses plaintiffs from performance of the replacement condition"), *aff'd*, 742 F.2d 1441 (2d Cir. 1983); *Matos v. Peerless Ins. Co.*, No. 14-cv-00120, 2017 WL

444687, at *10 (W.D.N.Y. Feb. 2, 2017) (same); *McCahill v. Com. Union Ins. Co.*, 446

N.W.2d 579, 581, 586 (Mich. Ct. App. 1989) (plaintiff was excused from performing

condition precedent of repairing or replacing property where insurance company denied claim

outright); *Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*, 180 Cal. Rptr. 3d 683,

696 (Cal. Ct. App. 2014) (similar); *Bailey v. Farmers Union Co-op. Ins. Co. of Neb.*, 498

N.W.2d 591, 597-98 (Neb. Ct. App. 1992) (plaintiff excused where she never recovered actual

cash value); *Rockford Mut. Ins. Co. v. Pirtle*, 911 N.E.2d 60, 66 (Ind. Ct. App. 2009) (insured

excused where first actual cash value offer came six months after the property was damaged,

at which time the property was in jeopardy from mortgage foreclosure and condemnation, and

the insured "was in a very bad position to start any repairs"); *Lake Charles Pilots Inc. v.

Landmark Am. Ins. Co.*, No. 21-cv-03152, 2023 WL 5490294, at *3 (W.D. La. Aug. 24, 2023)

(plaintiff excused where insurer had paid less than $20,000 on its claims and repairs cost more

than $1,000,000).[2]  Here, in contrast, Mt. Hawley has made three payments toward the

claim — totaling a substantial amount of over $300,000.  Zaveri Decl. ¶ 11; Campen Dep. Tr.

35:7-17; Campen Decl. ¶ 4; *see* Df. RSUF ¶ 33.  Unlike in the cases cited by Ram Krishana,

Mt. Hawley has neither denied Ram Krishana's claim nor refused to make payments toward

the actual cash value.  As a result, Ram Krishana is not excused from the policy's condition

precedent, and may not recover replacement costs for repairs to the Main Building that it has

not yet made.

---

[2] *Baluk v. New York Central Mutual Fire Insurance Co.*, 6 N.Y.S.3d 917 (App. Div. 2015),
referenced by Ram Krishana, Opp. at 14-15, is inapposite.  In *Baluk*, the court did not enforce
the two-year contractual limitation period in the policy because it took longer for the insureds
to complete the repairs.  *Id.* at 918.  There is no such contractual limitation period at issue
here.

Finally, Ram Krishana argues that it would be inequitable if it is limited to recovering only actual cash value, since Mt. Hawley's independent adjusters have, at various times, valued the loss as greater than what has been paid.  MSJ Opp. at 15.  Whether Mt. Hawley has paid the appropriate actual cash value on the claim is a dispute for which no party moves for summary judgment, given the fact issues at play.  However, such a dispute has no bearing on whether Ram Krishana is entitled to disregard the policy provisions and recover replacement costs for the Main Building without having actually incurred the cost of replacement.  Ram Krishana has cited to no case that so holds.

Thus, the Court will enter a summary judgment in favor of Mt. Hawley that Ram Krishana may not recover replacement costs for repairs it has not yet made.

### *DAUBERT* MOTION

Mt. Hawley next moves to exclude the testimony of Jeffrey Major, Plaintiff's expert on causation and amount of loss, under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. at 589.  *See generally* Daubert Br.

Under Federal Rule of Evidence ("FRE") 702:

A witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see Envy Branding, LLC v. William Gerard Grp., LLC*, No. 20-cv-03182 (JLR), 2024 WL 869156, at *7 (S.D.N.Y. Feb. 29, 2024) (same).  "In evaluating expert testimony under this standard, the court acts as a gatekeeper to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Republic of*

*Turkey v. Christies, Inc.*, 425 F. Supp. 3d 204, 220 (S.D.N.Y. 2019) (quoting *Daubert*, 509 U.S. at 597).

*Daubert* motions function differently in the context of bench trials, where "the judge acts as both gatekeeper and factfinder" and "must determine both whether expert evidence is admissible under FRE 702 and whether it is credible." *Town & Country Linen Corp. v. Ingenious Designs, LLC*, No. 18-cv-05075 (LJL), 2022 WL 2757643, at *2 (S.D.N.Y. July 14, 2022) (quoting 4 *Weinstein's Federal Evidence* § 702.02 (2024)).  Courts are generally more willing to admit expert testimony "in the context of a bench trial, where there is no possibility of prejudice, and no need to protect the factfinder from being overawed by 'expert' analysis." *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 502 (S.D.N.Y. 2013) (quotation marks and citation omitted); *accord BIC Corp. v. Far E. Source Corp.*, 23 F. App'x 36, 39 (2d Cir. 2011) (summary order) ("[A]dmission of evidence in a bench trial is rarely ground for reversal, for the trial judge is presumed to be able to exclude improper inferences from his or her own decisional analysis.").  Nevertheless, even in such cases, the Court must fulfill its "'gatekeeping' obligation" to ensure that the expert testimony is reliable and relevant.  *Conde v. United States*, No. 19-cv-08506 (NRB), 2021 WL 3604701, at *12 (S.D.N.Y. Aug. 13, 2021) (quoting *Daubert*, 509 U.S. at 597).

In his expert report, Mr. Major provides his estimate of damage to the Properties and opines that Mt. Hawley improperly estimated damages, undervalued the claim, and failed to make proper actual cash value payments in a timely manner.  Dkt. 103-2 at 3.  He estimates that the actual cash value of the loss is $1,342,605.08.  *Id.* at 31.  Mr. Major's expert report relies in part on estimates calculated in a software program called Xactimate.  *Id.* at 32. Xactimate supplies default prices, but users can, as Mr. Major did here, input prices themselves.  Dkt. 103-1 ("Major Dep. Tr.") 174:22-175:7.

Mt. Hawley does not challenge Mr. Major's qualifications, *see* Oral Arg Tr. 43:24-44:2, and the Court has reviewed Mr. Major's training and experience, *see* Dkt. 100-1 (Mr. Major's CV), and concludes that Mr. Major, a public adjuster who has adjusted numerous insurance claims arising from hurricanes in the Louisiana area, is qualified to testify about replacement cost valuation and insurance adjustment. *See Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005) (the question of "whether a witness is 'qualified as an expert'" is a "threshold question" to be answered in considering whether to admit an expert's testimony (quoting Fed. R. Evid. 702)).

Rather, Mt. Hawley argues that Mr. Major's opinions are unsupported and unreliable based on the price inputs underlying his cost estimates using Xactimate.  Daubert Br. at 1-2.  Mt. Hawley does not argue that Xactimate is an unreliable tool for cost estimation in the insurance industry, *see* Oral Arg. Tr. 44:3-11 ("I take no issue whatsoever as it relates to the use of that Xactimate software."), and Ram Krishana cites to several cases approving the use of this common software program, *see* Daubert Opp. at 9.  Instead, Mt. Hawley claims that Mr. Major's opinions are unreliable because the cost information that he purportedly entered into the Xactimate tool for some prices was based only on his general experience and no documentation or objective substantiation for those estimates was provided.  Daubert Br. at 5-6.  The Court disagrees that his opinion should be excluded on this ground.

As Mr. Major testified at his deposition, he gathered prices from "actual builders who did the work in this event," Major Dep. Tr. 176:23-177:4, "invoices from contractors and their estimates," *id.* at 178:1-2, invoices he reviewed, and interviews with contractors, as well as work he did as an adjuster on similar claims during the relevant period, *id.* at 178:1-19.  "[I]t is not uncommon for experts to rely on interviews with third parties in forming their opinions," and challenges to such inputs properly go to weight, rather than admissibility.

*Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 355 (S.D.N.Y. 2023) (quoting *Williams v. Illinois*, 567 U.S. 50, 109 (2012) (Thomas, J., concurring)).  Numerous courts have considered *Daubert* challenges to experts who used Xactimate, but deviated from the default prices or otherwise purportedly erred, and have found that such challenges go to the weight to give an expert's opinions, not the admissibility of their testimony.  *See, e.g.*, *Cooley v. State Farm Fire & Cas. Co.*, 661 F. Supp. 3d 618, 626 (S.D. Miss. 2023) (rejecting argument that expert's testimony should be excluded because the expert "deviat[ed] from the program's prices" and were therefore unreliable, because "[m]iscalculations and inaccuracies [in using Xactimate] . . . go to the weight of the evidence and not its admissibility" (omission in original) (citation omitted) (collecting cases)); *Shadow Lake Mgmt. Co. v. Landmark Am. Ins. Co.*, No. 06-cv-04357, 2008 WL 2510121, at *4 (E.D. La. June 17, 2008) (similar); *Coshap, LLC v. Ark Corp. Member Ltd.*, No. 16-cv-00904, 2017 WL 9287017, at *4-5 (N.D. Ga. Dec. 12, 2017) (party's argument attacking expert's "choices about what to include in, or omit from, his estimate . . . confuse[d] the correctness of an opinion with the reliability of the underlying process of arriving at an opinion" and went to weight, not admissibility); *Emmanuel Baptist Church v. State Farm Fire & Cas. Co.*, No. 11-cv-00594, 2012 WL 6084497, at *4-5 (W.D. Okla. Dec. 6, 2012) (similar).

*La Gorce Palace Condominium Ass'n, Inc. v. Blackboard Specialty Insurance Co.*, 586 F. Supp. 3d 1300 (S.D. Fla. 2022), which Mt. Hawley cites in support of exclusion, is distinguishable.  In that case, which involved a jury trial, the court excluded the testimony of an expert who used Xactimate.  *See id.* at 1310-11.  Like Mr. Major, that expert input at least some of his own costs.  *Id.*  However, the expert in *La Gorce* could not describe the methodology he relied upon in calculating input values, did not explain an intelligible process for identifying which damages he deemed to preexist the hurricane nor even identify the

damages he excluded on this basis, and could not provide any measurements associated with his estimated costs. *Id.* at 1310-12. The court also questioned how the expert determined the cost of repair for such a large property over just two days. *Id.* at 1310. The court excluded his testimony because "[t]he methodological deficiencies in [the expert's] investigation render[ed] the Xactimate input values unreliable." *Id.* at 1311 (emphasis omitted). Here, however, Mr. Major identified the particular prices that he independently input into Xactimate and explained that the costs came from builders who did work in the storm that damaged Plaintiff's property and his own experience in adjusting similar claims. *See* Major Dep. Tr. 175:4-12, 176:23-178:19. While Mr. Major apparently does not have any documentation to support his estimates, *see* Oral Arg. Tr. 46:7-47:13, deficiencies in Mr. Major's methodology for gathering prices do not reach the level of the methodological deficiencies in *La Gorce*, in which the expert could not explain how he gathered data or formed his damage estimations, *see* 586 F. Supp. 3d at 1310-11; *cf. Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 267 (W.D.N.Y. 2013) ("[U]nless the information or assumptions that [a party's] experts relied on were so unrealistic and contradictory as to suggest bad faith, inaccuracies in the underlying assumptions or facts do not generally render an expert's testimony inadmissible." (second alteration in original) (quoting *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 269 (S.D.N.Y. 2010))). Also, very importantly, the expert testimony in *La Gorce* would have been presented to a jury rather than to the Court in a bench trial, as here.

Mt. Hawley may well have strong cross-examination fodder based on the fact that Mr. Major has not produced records or written substantiation of the estimates that he included that were based on his expertise and experience. Such critiques will be closely scrutinized by the Court in determining the weight, if any, to afford Mr. Major's opinions. But given that this case is set to be tried to the bench, "unless the disputed evidence is wholly irrelevant or so

speculative as to have no probative value, it is appropriate for the Court to take in the evidence freely and separate helpful conclusions from ones that are not grounded in reliable methodology." *Christie's*, 425 F. Supp. 3d at 220 (citation and internal quotation marks omitted); *see also Clark v. Quiros*, No. 19-cv-00575, 2024 WL 3292540, at *5 (D. Conn. July 3, 2024) ("[I]n the context of a bench trial, the risk is with exclusion of expert testimony rather than with its admission — it is exclusion that has the potential for an indelible impact on the record." (citation and internal quotation marks omitted)).

Therefore, the Court will deny Mt. Hawley's motion to exclude Mr. Major's testimony.

## CONCLUSION

For the reasons stated above, Mt. Hawley's motion for summary judgment is GRANTED in part and DENIED in part, and its *Daubert* motion is DENIED.  Plaintiff's Louisiana claims are dismissed with prejudice.  As for its breach of contract claim, Ram Krishana is not entitled to recover for damage to the Restaurant Property because it does not have an insurable interest in that property, and it is not entitled to replacement cost coverage for repairs it has not yet made.  The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 97 and 101.

The parties shall file their joint pretrial order and other pretrial submissions by

**February 28, 2025**.  A final pretrial conference will be held on **April 15, 2025 at 2:00 p.m.**

and a bench trial will be held on **April 21, 2025**.

Dated:  February 3, 2025
         New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge